UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. CHRISTINA HALL<br><br>Plaintiffs,<br><br>v.<br><br>ASCENTIA HOME HEALTH CARE, LLC;<br>ASCENTIA MANAGEMENT SERVICES, LLC;<br>SUNSET BAY ASSISTED LIVING;<br>THE VILLAS OF CASA CELESTE;<br>THE BARRINGTON;<br>PETER CANDELORA, M.D.;<br>PAUL GONZALEZ, M.D.;<br>DANIEL RODRIGUEZ, M.D.;<br>OPTIMUM FAMILY CARE;<br>VIKRAM ATIT, M.D.;<br>ESTEBAN ALFONSO RUIZ, M.D.<br>HILLARY KASARJIAN, RN, BSN; and<br>RONALD J. COLLIGAN<br><br>Defendants. | CASE NO. 8:09 cv 2393-T26 AEP<br><br>FILED IN CAMERA<br>UNDER SEAL |

## COMPLAINT UNDER THE *QUI TAM* PROVISIONS OF THE FALSE CLAIMS ACT

### INTRODUCTION

1. This is an action brought by Relator, Christina Hall, on behalf of the United States of America, to recover damages and civil penalties against Defendants pursuant to the Federal Civil False Claims Act, Title 31 U.S.C. § 3729 et seq., ("FCA").

2. Relator's *qui tam* action alleges that Defendants have defrauded the government by knowingly submitting and/or causing to be submitted fraudulent claims for payment for home health care services to Medicare in violation of the False Claims Act. Defendant Ascentia has engaged in

fraudulent activities including but not limited to: seeking reimbursement for services not rendered, fraudulently qualifying patients for Medicare-covered home health care, operating improper drop-off sites at the Defendant Assisted Living Facilities, and paying kickbacks to the Defendant Assisted Living Facilities and the Defendant physicians. The Defendant Assisted Living Facilities have accepted kickbacks from Ascentia in exchange for their referral of patients to Ascentia's home health care programs. The Defendant physicians also have accepted kickbacks and have made improper referrals to Ascentia in violation of the Anti-kickback Statute, Stark Statute, and the False Claims Act.

3. The FCA provides that any person who submits a false claim to the government is liable for a civil penalty of between $5,500 and $11,000 for each such claim, and three times the amount of the damages sustained by the government. The Act permits persons having information regarding a false or fraudulent claim against the government to bring an action on behalf of the government and to share in any recovery. Pursuant to 31 U.S.C. § 3730(b)(2), this complaint must be filed *in camera* and under seal, without service on the defendant. The complaint remains under seal while the government conducts an investigation of the allegations in the complaint and determines whether to join the action.

## JURISDICTION AND VENUE

4. This action arises under the False Claims Act, 31 U.S.C. § 3729 et seq. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3730, and 28 U.S.C. § 1345.

5. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process. Defendants can be found in, reside in, or have

transacted business in the Middle District of Florida.

6. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants can be found in, reside in, or have transacted business in the Middle District of Florida, and many of the alleged acts occurred in this District.

7. Relator is an "original source" as defined by the False Claims Act and no allegation set forth in this Complaint is based on a public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or General Accounting Office report, hearing audit, or investigation, or from the news media.

## THE PARTIES

8. Relator, Christina Hall, is a resident of New Port Richey, Pasco County, Florida and was employed as an Account Manager by Defendant Ascentia from September 24, 2007 until January 18, 2009. As an Account Manager, Relator was the liaison between the physicians and the healthcare facilities with regard to the home health care services provided by Ascentia.

9. Defendant Ascentia Home Health Care, LLC, is a full service Medicare Certified and Florida Licensed Home Health Company. Defendant provides services in Hillsborough, Pasco and Pinellas Counties and has offices in Tampa, New Port Richey, and Clearwater. Defendant Ascentia's principal address is 2495 Enterprise Rd., Suite 101, Clearwater, Florida 33763. Ascentia provides the "full range of 100% Medicare Covered Home Health Care Services" including specialized home health care programs, skilled nursing, physical therapy, occupational therapy, speech/language pathology, medical social services, medical supplies, and home health aide services. Defendant Ascentia Management Services, LLC is located at 527 Scotland Ave., Dunedin, Florida 34698. Defendant Ascentia Home Health Care, LLC and Defendant Ascentia Management

Services, LLC are collectively referred to hereinafter as "Ascentia." Ascentia is owned by Defendant Hillary Kasarjian, RN, BSN (CEO of Ascentia) and Defendant Ronald J. Colligan (CFO of Ascentia).

10. Defendant Sunset Bay Assisted Living is located at 7423 Kauai Loop, New Port Richey, Pasco County, Florida 34653-6154 and has approximately 70 residents.

11. Defendant The Barrington is located at 901 Seminole Blvd., Largo, Pinellas County, Florida 33770 and provides both independent and assisted living facilities.

12. Defendant The Villas of Casa Celeste is located at 9225 82nd Ave. North, Seminole, Pinellas County, Florida 33777 and is an assisted living facility.

13. Defendant Daniel Rodriguez, M.D. and Defendant Paul Gonzalez, M.D. belong to the group practice Defendant Optimum Family Care located at 3531 Little Road, Trinity, Florida 34655. Dr. Rodriguez is also the Medical Director at Defendant Sunset Bay Assisted Living. Dr. Gonzalez's wife, Maritza Davila, is employed by Defendant Ascentia as an Account Manager.

14. Defendant Vikram Atit, M.D. belongs to the group practice, Bay View Neurology located at 2222 US Highway 19, Holiday, FL 34691. Dr. Atit's wife, Taruna Attit, is employed by Defendant Ascentia as an Account Manager.

15. Defendant Peter Candelora, M.D. practices at Coastal Orthopedics located at 5145 Deer Parks Drive, New Port Richey, Florida 34653. Dr. Candelora's wife, J'aimee Candelora, is employed by Defendant Ascentia as an Account Manager.

16. Defendant Esteban Alfonso Ruiz, M.D. is a family practitioner/internist who practices at Bayshore Physicians of Florida located at 8813 River Crossing Blvd., New Port Richey, Florida 34655. Dr. Ruiz was also the Medical Director of Defendant Ascentia for several years.

## FACTUAL ALLEGATIONS

### Defendant Ascentia has improperly received reimbursement from Medicare for home health care services by billing for services not rendered and fraudulently qualifying patients for home health care

17. One of the conditions that a patient must meet in order to qualify for Medicare-covered home health care is that the patient be "confined to his home." Pursuant to 42 U.S.C. §1395f(a), an individual is confined to his home if:

> [T]he individual has a condition, due to an illness or injury, that restricts the ability of the individual to leave his or her home except with the assistance of another individual or the aid of a supportive device . . . or if the individual has a condition such that leaving his or her home is medically contraindicated. While an individual does not have to be bedridden to be considered "confined to his home," the condition of the individual should be such that there exists a normal inability to leave home and that leaving home requires a considerable and taxing effort by the individual.

18. In addition, 42 CFR § 484.55 states that for Medicare beneficiaries, the Home Health Agency (HHA) "must verify the patient's eligibility for the Medicare home health benefit including homebound status, both at the time of the initial assessment visit and at the time of the comprehensive assessment."

19. When Ascentia receives an order from a physician to evaluate a patient to determine if he/she qualifes for home health care, Ascentia sends one of its nurses to assess the patient's health status and verify the patient's eligibility for Medicare-covered home health care. Ascentia nurses often intentionally misrepresent the patient's health status in order to qualify the patient for home health care. For example, Ascentia nurses falsely state that the patient is confined to his/her home when the patient is, in fact, not homebound. The doctor then signs off on the order for home health care based on Ascentia's evaluation without knowing that

Ascentia's evaluation contains false information. Ascentia then attaches the doctor's order and signature to the 485 billing form and submits them to Medicare to receive reimbursement. These billings submitted to Medicare for services provided to individuals who do not qualify for home health care constitute false claims under the False Claims Act.

20. While Relator was employed by Defendant Ascentia, she also became aware of numerous instances in which Ascentia sought reimbursement for home health care services from Medicare even though those services had never been performed. For example, a patient at the Allegro at East Lake Assisted Living Facility named Ida Dugh complained to Relator that Ascentia's psychiatric nurse assigned to that facility had not been to the Allegro in several weeks. Relator checked the sign-in sheets at the facility and confirmed that the nurse had not been to the Allegro in several weeks even though she was required to see patients at the facility during that time period. Relator provided evidence of this violation to Ascentia's case manager, but Ascentia took no corrective action.

21. During Relator's investigation of Ascentia's practice of receiving reimbursement from Medicare for services not rendered, Relator learned that Ascentia was engaging in this practice at other assisted living facilities as well. For instance, an Ascentia nurse named Theresa Sharpe falsely represented in approximately 70 patient records that she had provided services to the patients, when, in fact, she had never performed those services. Medicare, unaware of the fact that these services had not been rendered, paid Ascentia approximately $3,500 for each of these 70 patients.

22. Ascentia not only caused the submission of false claims to the government when it sought payment from Medicare for home health care services never rendered, but also

threatened the health and well-being of its patients each time it failed to provide the healthcare services it had agreed to perform.

### Defendant Ascentia and Defendant Assisted Living Facilities have violated the False Claims Act and Anti-Kickback Statute in connection with Ascentia's Drop-Off Sites at the Facilities

23. With regard to drop-off sites operated by home health agencies, Florida Administrative Code 59A-8.003(8) states:

> A licensed home health agency may operate a drop-off site in any county within the geographic service area specified on the license. A drop-off site may be used for pick-up or drop-off of supplies or records, for agency staff to use to complete paperwork or to communicate with the main office, existing or prospective agency staff, or the agency's existing patients. Prospective patients cannot be contacted and billing cannot be done from this location. The drop-off site is not a home health agency office, but merely a work station for direct care staff in large areas where the distance is too great for staff to drive back frequently to the home health agency office. A drop-off site shall not require a license. No other business shall be conducted at these locations, including housing of records. The agency name cannot appear at the location, unless required by law or by the rental contract, nor can the location appear on agency letter head or in advertising.

24. Defendant Ascentia violated numerous aspects of these rules governing drop-off sites. For example, Ascentia operated drop-off sites, such as the one at Sunset Bay Assisted Living Facility, that were located in close proximity to its own offices. Ascentia also treated patients at certain drop-off sites, including the site at the Barrington facility, even though home healthcare services are to be provided in the patient's home and not at the drop-off site. Ascentia then fraudulently billed Medicare for home health care services that were provided at these drop off-sites.

25. In addition, Defendant Ascentia often used improper drop-off site lease

agreements with assisted living facilities to disguise its payment of illegal kickbacks to the facilities. For example, Ascentia paid Sunset Bay Assisted Living facility approximately $1,000 a month to rent a drop-off site at the facility when the fair market value for such a site is only approximately $300. Therefore, the amount of money which exceeded the fair market value ($700 per month) was actually a kick-back to Sunset Bay in order to induce the facility to refer its patients to Ascentia for treatment.

26. In certain instances as a result of the kickbacks, the Defendant Assisted Living Facilities would even approach patients' physicians in order to obtain orders for home health care to increase the number of patients they could refer to Ascentia. This strategy resulted in increased referrals to Ascentia because when a physician issues an order for home healthcare, he/she usually allows the assisted living facility to decide to which home health agency the patient will be referred.

27. The fact that approximately 65% of the residents at the Villas of Casa Celeste facility receive home health care from Ascentia is further evidence that Ascentia's payment of kickbacks has induced the facilities to refer their patients to Ascentia.

28. All of the claims submitted to Medicare for services provided by Ascentia to residents of the assisted living facilities during the time period that Ascentia was providing kickbacks to those facilities violated the False Claims Act. Ascentia as a Medicare home health care provider must certify compliance with all federal healthcare laws in order to receive reimbursement from Medicare. Therefore, Ascentia and the Assisted Living Facilities that entered into these illegal kick-back arrangements with Ascentia caused Ascentia's certification of compliance with federal laws to be false and/or fraudulent in violation of the False Claims Act.

### Defendant Physicians have made improper referrals to Defendant Ascentia in violation of the False Claims Act, Stark Statute and Anti-kickback Statute

29. The Stark Statute, 42 U.S.C. § 1395nn(a)(1) prohibits physicians from referring Medicare designated health services to entities with which they (or an immediate family member) have a financial relationship. Home health services are considered designated health services for purposes of the Stark Statute, 42 U.S.C. § 1395nn(h)(6). The regulations implementing 42 U.S.C. § 1395nn expressly require that any entity collecting payment for a healthcare service performed under a prohibited referral must refund all collected amounts on a timely basis. 42 C.F.R. § 411.353.

30. While Relator was employed at Ascentia as an account manager, she learned that three other Ascentia account managers, Taruna Atit, J'aimee Candelora, and Maritza Davila, were receiving financial rewards from Ascentia based on referrals of patients to Ascentia's home health care programs made by the three account managers' husbands who were also the patients' physicians. Their husbands, Dr. Peter Candelora, Dr. Vikram Atit, and Dr. Paul Gonzalez, violated the Stark Statute, Anti-kickback statute and False Claims Act each time they referred a patient to Ascentia for home health care because their wives had a financial relationship with Ascentia.

31. By referring patients to Ascentia, the Defendant physicians assisted their wives in receiving lucrative bonuses from Ascentia. The Defendant physicians and their wives knew that these referrals were improper and they attempted to conceal their Medicare fraud. For instance, Mrs. Candelora and Mrs. Davila (Gonzalez) used the name "Team Lola" on Ascentia's records as opposed to their real names so that the improper referrals could not be traced back to their husbands.

32. Furthermore, Defendant Ascentia is not entitled to any of the payments it received from Medicare as a result of services provided to patients improperly referred by the Defendant physicians.

33. The three doctors identified above were not the only physicians making improper referrals to Ascentia. Relator also learned that Dr. Paul Gonzalez's partner, Dr. Daniel Rodriguez, the other physician at Optimum Family Care, was also referring patients to Ascentia and Dr. Gonzalez's wife was receiving credit for those patient referrals as well. In addition, Defendant Dr. Rodriguez, is the Medical Director at Defendant Sunset Bay Assisted Living, which as previously explained, was receiving kickbacks from Ascentia in exchange for referrals to Ascentia's home health care programs.

34. Defendant Esteban Alfonso Ruiz, M.D. has also improperly referred patients to Ascentia. Dr. Ruiz owned a plaza in which one of the Ascentia sites is located and collected rent from Ascentia. For several years, Dr. Ruiz also received $1,000 a month as Medical Director of Ascentia. During the time that Dr. Ruiz had a financial relationship with Ascentia, he wrote a large volume of referrals to Ascentia's home health care programs. Relator learned that Ascentia attempted to have Dr. Ruiz sign a new contract with the newly created entity Ascentia Management Services, LLC in an effort to circumvent changes in state regulations which occurred in July of 2008.

35. Ascentia gained referrals to its home health care programs through various fraudulent schemes and activities. In addition to violating Stark and anti-kickback laws, Ascentia also improperly paid recruiters to obtain patient referrals. For example, Relator learned of an individual named Haleem, code name "Sam," who was paid under the table by Ascentia to obtain

patient referrals to its home health care programs.

36. When Relator attempted to stop Ascentia's violations and reported its fraudulent activities to other Ascentia employees and management, including CEO Hillary Kasarjian and Executive Director, Judi Dougherty, Ascentia retaliated against her by creating a hostile work environment which eventually left Relator no other option than to resign from her employment. Furthermore, Ascentia took no corrective action despite Relator's complaints regarding its fraudulent activities.

## COUNT I
### Violation of False Claims Act, 31 U.S.C. § 3729(a)
### prior to and after the amendments enacted on May 20, 2009

37. Relator realleges and incorporates by reference the allegations of paragraphs 1-36 of this complaint.

38. This count sets forth claims for treble damages and forfeitures under the federal False Claims Act, 31 U.S.C. §§ 3729-3732.

39. Through the acts described above, Defendants and their agents and employees knowingly presented or caused to be presented false and/or fraudulent claims, records, and statements to the government in order to cause Medicare to pay for Ascentia's home health care services.

40. Under the False Claims Act 31 U.S.C. § 3729(a) in effect prior to May 20, 2009, Defendants have violated:

(a) 31 U.S.C. § 3729(a)(1) by knowingly presenting, or causing to be presented, to an officer or employee of the United States Government or a member of the Armed

Forces of the United States a false or fraudulent claim for payment or approval;

(b) 31 U.S.C. § 3729(a)(2) by knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; and/or

(c) 31 U.S.C. § 3729(a)(3) by conspiring to defraud the Government by getting a false or fraudulent claim allowed or paid.

41. Under the False Claims Act 31 U.S.C. § 3729(a)(1) as amended on May 20, 2009, Defendants have violated:

(a) 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval;

(b) 31 U.S.C. § 3729(a)(1)(B) by knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim; and/or

(c) 31 U.S.C. § 3729(a)(1)(C) by conspiring to commit a violation of subparagraph (A) or (B).

42. The United States, unaware of the falsity of the claims, approved, paid, and participated in payments made by the United States for claims that otherwise would not have been allowed.

43. By reason of Defendants' false claims, the United States has been damaged and possibly continues to be damaged.

## COUNT TWO
### Defendant Ascentia's Violation of 31 U.S.C. § 3730(h)

44. Relator realleges and incorporates by reference the allegations of paragraphs 1-36 of this complaint.

45. In violation of the False Claims Act § 3730(h), Defendant Ascentia discriminated and took negative employment actions against Relator as a result of lawful actions taken by Relator in furtherance of her qui tam action and of efforts to stop Defendant's False Claims Act violations.

46. Defendant Ascentia created a hostile work environment which forced Relator to resign from her employment.

47. As a result of Defendant's retaliatory and discriminatory conduct, Relator has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Relator requests that judgment be entered against Defendants, ordering that:

    a. Defendants pay an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $5,500, and not more than $11,000 for each violation of 31 U.S.C. § 3729;

    b. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

    c. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 et seq.;

    d.    Relator be awarded all damages available pursuant to 31 U.S.C. § 3730(h) as a result of Defendant Ascentia's retaliation against Relator, including but not limited to 2 times the amount of back pay, interest on the back pay, and compensation for any special damages as a result of the discrimination, including damages for emotional distress;

    e.    Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and (h); and

    f.    The United States and Relator be granted all such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

A jury trial is requested in this cause.

Dated this 24th day of November, 2009.

ELAINE STROMGREN
Florida Bar No. 0417610
estromgren@jameshoyer.com
JOHN R. NEWCOMER, JR.
Florida Bar No. 143380
jnewcomer@jameshoyer.com
JAMES, HOYER, NEWCOMER,
   SMILJANICH & YANCHUNIS, P.A.
One Urban Centre, Suite 550
4830 West Kennedy Boulevard
Tampa, Florida 33609
Phone: (813) 286-4100
Fax: (813) 286-4174

Attorneys for *Qui Tam* Relator